UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| REY MARTINEZ,<br><br>  Plaintiff,<br><br>  v.<br><br>CITY OF TUKWILA POLICE DEPARTMENT, et al.,<br><br>  Defendants. | Case No. C14-1207RSM<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

## I.   INTRODUCTION

This matter comes before the Court on Defendants' Motion for Summary Judgment, Dkt. #15. Defendants, City of Tukwila and Officer Jamie Sturgill, move for summary judgment dismissal of all of Plaintiff's claims on procedural and substantive grounds. *Id.* at 1. Plaintiff Rey Martinez did not file a Response or otherwise address Defendants' Motion until January 4, 2016.[1] *See* Dkt. #22. For the reasons set forth below, the Court GRANTS Defendants' Motion for Summary Judgment.

//

//

---

[1] The Court notes that it has previously issued an Order to Show Cause why this case should not be dismissed for failure to prosecute after the Plaintiff initially failed to file a Joint Status Report as directed by the Court. Dkt. #9.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 1

## II. BACKGROUND

The Court will summarize the facts in this case from the Complaint, Defendants' Motion, and attached exhibits where appropriate.[2]

Plaintiff Rey Martinez attended a house party the evening of April 16, 2011, at 13305 Macadam Road South in Tukwila, Washington. Dkt. #5 at 5. Mr. Martinez, his wife, and other partygoers were drinking alcohol that evening. Dkt. #17-1 at 24-26. Mr. Martinez testified that there were people at the party who were intoxicated. *Id.* at 28.

At 9:15 p.m., Alicia Waterton called 911 and reported hearing "multiple gunshots" near the address of 13219 E. Marginal Way South in Tukwila, Washington on Macadam Road. Dkt. #16-1 at 2. A minute later, a second 911 caller named Joan Meagher reported hearing at least 20 to 30 shots, and stated she believed it was in the area of 133 Macadam Road. *Id.* Several other members of the public called to report gunshots in the area. *Id.* at 3. Daniel Grise, who lived at 13325 Macadam Road, called 911 and stated he heard possibly 10 to 12 shots coming from his next door neighbor's house, and reported he heard people talking prior to the shots. *Id.*

Tukwila police officers Tim Bonagofski, Nick Hogan, Erik Kunsmann, Zack Anderson, Adam Balcom and Jamie Sturgill were dispatched to the call. *Id.* at 2-3. Dispatch advised the officers there were several people calling to report up to 20 shots fired in the location of the 13300 block of Macadam Road South. *Id.* at 19. The 911 call receiver also heard shots over the phone while talking to one of the many 911 callers. *Id.* When the officers arrived in the area, several of the 911 callers came out of their houses and pointed the officers in the direction of a house at 13305 Macadam Road. *Id.* After Officer Sturgill arrived in the area, a male ran up to

---

[2] The Court notes that Plaintiff's Response, Dkt. #22, was filed more than a month after the noting date for this Motion without leave of the Court. Plaintiff's brief contains no explanation for the delayed filing and will not be considered. Even if the Court were to consider Plaintiff's Response, nothing therein would alter the Court's ruling on this Motion. The Court further notes that Plaintiff's brief cites generally and without specific paragraphs to an affidavit of the Plaintiff that is not sworn before a notary or declared true under penalty of perjury. *See* Dkt. #22-1.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 2

his car and said he was positive that the shots came from a house party approximately 200 yards from his home. *Id*. Officer Sturgill looked in the direction he was pointing and saw several people standing outside in the backyard of a house just south of the overpass bridge. *Id*. The officers approached the house at approximately 9:24 p.m., nine minutes after the first 911 call came in. *Id*.

The officers walked into the backyard where they were met by approximately 15 to 20 adults. *Id*. According to a "Follow Up Report" signed by Officer Sturgill on April 17, 2011, the group of adults appeared to be highly intoxicated and aggressive upon initial contact with police. *Id.* at 21. One adult male began swearing at Officer Bonagofski and was escorted away from the other subjects. *Id.* at 19. Officer Sturgill and the other officers began telling the party crowd why they were there, specifically that gunshots were reported and that people were pointing out their location. *Id*. The partygoers admitted they had also heard shots, but claimed they did not come from their party. *Id*. The group became mostly cooperative once they were informed of the reason for the police contact. *Id.* at 21.

Officer Sturgill quickly looked for bullet casings on the ground but did not see any. *Id.* at 19. He asked for permission to look around inside the house to check on the welfare of those inside. *Id*. This was allowed and everyone inside seemed fine. *Id*. He walked back outside, and walked over to where Officer Bonagofski was talking to the male who had been swearing when they arrived. *Id*.

At some point Officer Sturgill saw Officer Hogan engaged in a fist fight with a male from the party. *Id.* at 19. According to Mr. Martinez, there was "a lot of commotion" when the fight began. Dkt. #17-1 at 59. According to Mr. Martinez, the partygoers were "loud" and "upset to see what was happening." *Id*. at 59-60. He estimates the fight lasted between two to

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 3

four minutes. *Id.* at 60.  Officer Sturgill ran up to the fight and deployed his pepper spray in the eyes and face of the partygoer and the partygoer was tasered by another officer.  Dkt. #16-1 at 19.  Officers were then able to get the partygoer in handcuffs.  *Id.*

According to a report signed by Officer Anderson, he saw the crowd become increasingly aggressive and advance toward the police in response to the arrest of this partygoer.  *Id.* at 21.  The Plaintiff's wife testified that the entire group of partygoers moved toward the altercation between Turner and the police officer at the same time.  Dkt. #17-1 at 32.  Officer Balcom could see additional subjects in the crowd step forward and try to engage with Officer Hogan and the subject he was fighting with.  Dkt. #16-1 at 25.  Officer Balcom began to push multiple unknown subjects away for the safety of the police officers.  *Id*. According to Officer Balcom, the scene immediately intensified and almost all of the subjects in the crowd began to swear profanities and attempt to get involved.  *Id.* at 25-26.  Balcom was yelling at people to "Back up!" and "Stay back!" but his orders were being ignored and he had to continue to push people back.  *Id.* at 26.  Officer Balcom noticed one male in the crowd appeared to be "fueling the fire" and was getting others riled up.  *Id*.  This subject was wearing a black Carhart jacket with a logo on the back and patches down the sleeve.  *Id*.  This male was Plaintiff.  *See* Dkt. #17-1 at 56-57.  According to Officer Balcom, he was swearing profusely and flailing his arms in an aggressive manner, which escalated the others.  Dkt. #16-1 at 26.  He was saying things such as "Fuck you!" and "Get off him I'll fuck you up!"  *Id*. Officer Balcom had to push the male backwards at least twice.  *Id.*

There was some kind of struggle at some point in the arrest of the initial partygoer. Mr. Martinez admits he did not see or hear anything that happened between Mr. Turner and the police officer before they popped out from behind a car and tumbled to the ground.  Dkt. #17-1

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 4

at 40-41. After they fell to the ground, Mr. Martinez saw several officers run over, and testified that an officer hit the partygoer in the face, and that another officer hit him with a baton. *Id*. Mr. Martinez testified he had his own hands raised up above his head during the arrest of the other partygoer. *Id.* at 61. He testified his body was tensed up as it was a stressful situation. *Id*. His wife testified that Mr. Martinez was yelling at the officers struggling with the partygoer and saying, "Fucking stop. What the fuck are you doing? Leave him alone." *Id*, at 29. Mr. Martinez describes this as "pleading" with an officer standing in front of him to make them stop. *Id*, at 44. Mr. Martinez admitted he was saying things such as, "Get the fuck off him. Stop doing that shit." *Id.* at 46-47.

Officer Sturgill believed that Mr. Martinez intended to harm other officers based on his body language and tone of voice and proximity to the arrest. Dkt. #16-1 at 19-20. Based on this belief, Officer Sturgill sprayed Mr. Martinez in the eyes and face once with his pepper spray and forced him to the ground; Officer Balcom handcuffed Mr. Martinez. *Id.* at 20. The officers were unable to get control of the crowd of partygoers and retreated from the scene. *Id.* Mr. Martinez was transported to the police station and had his face sprayed off with water and was allowed to wash his face off in a jail cell. *Id.*

### III.   DISCUSSION

**A. Legal Standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 5

the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 251.

### B. Analysis

Plaintiff's Complaint seeks relief under §1983 and alleges as causes of action violations of the Washington State Constitution for due process and cruel and unusual punishment, violations of the U.S. Constitution under the Fourth Amendment for unreasonable search and seizure and unreasonable force, under the Eighth Amendment for cruel and unusual punishment, and otherwise for due process. Dkt. #5 at 6-7.

#### 1. Fourth Amendment Claim

Ninth Circuit courts analyze all claims of excessive force that arise during or before arrest under the Fourth Amendment's reasonableness standard. *Coles v. Eagle*, 704 F.3d 624, 627 (9th Cir. 2012). The Court must ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Graham v. Connor*, 490 U.S. 386, 397 (1989). This inquiry "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 6

governmental interests at stake." *Id*. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985)). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." *Glenn v. Washington County*, 673 F.3d 864, 871, (9th Cir. 2011) (citing *Graham*, 490 U.S. at 396-97). "Reasonableness therefore must be judged from the perspective of a reasonable officer on the scene, 'rather than with the 20/20 vision of hindsight.'" *Id.* (citing *Graham*, 490 U.S. at 396).

The analysis involves three steps. "First, we must assess the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted." *Glenn*, 673 F.3d at 871 (citing *Espinosa v. City and County of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010)) (internal quotation marks omitted). "[E]ven where some force is justified, the amount actually used may be excessive." *Id.* (citing *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002)). "Second, we evaluate the government's interest in the use of force." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396 109 S.Ct. 1865 (1989)). In evaluating the government's interest in the use of force, The Court looks to: "(1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight," however, the inquiry is not limited to these factors. *Young v. Cnty. of Los Angeles*, 655 F.3d 1156, 1163 (9th Cir. 2011) (citing *Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th Cir. 2003)). "Finally, 'we balance the gravity of the intrusion on the individual against the government's need for that intrusion.'" *Glenn*, 673 F.3d at 871 (citing *Miller*, 340 F.3d at 964).

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 7

Defendants point to *Jackson v. City of Bremerton*, 268 F.3d 646 (9th Cir. 2001) as a case with a similar fact pattern where the Ninth Circuit determined that the use of pepper spray did not violate the Fourth Amendment's prohibition of unreasonable force. In that case, plaintiff Jackson and her family were attending a party in a park where alcohol was being served. *Jackson,* 268 F.3d at 649. Police arrived and recognized one of the family members as someone with an outstanding warrant. *Id.* This person, Jackson's son, attempted to flee into the group of people and escape arrest. *Id.* At least two more officers arrived and the group yelled and swore at the police and "advanced upon them" as they tried to arrest Jackson's son. *Id.* Fights broke out between police and members of the group and the plaintiff ran over to try and interfere with an officer fighting with a female friend. *Id.* at 650. At some point the officers warned the group a chemical irritant would be used if they did not disperse. *Id.* An officer applied pepper spray to Jackson to prevent her interference. *Id.* Jackson's hair was sprayed with pepper spray which dripped down her head, she was handcuffed in a rough manner, and an officer rolled up the windows of the patrol car she was sitting in with the chemical still on her head when she continued to argue with him. *Id.* The Ninth Circuit ruled the nature and quality of these intrusions against the plaintiff were "minimal." *Id*, at 652.

The court further ruled that the officers were "substantially outnumbered" and faced with a group that refused to obey the officers' commands to disperse, shouted at the officers, and that engaged the officers in verbal and physical altercations. *Id*, 652-53. Jackson's active interference posed an immediate threat to the officers' personal safety and ability to control the group. *Id*. Under circumstances that the plaintiff herself described as a "melee," the force applied was reasonable and necessary to control a "rapidly evolving" and escalating situation.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 8

*Id*, at 653. On balance, applying the *Graham* analysis, the Ninth Circuit ruled the use of force was not excessive.

The Court finds *Jackson* to be a case with an analogous fact pattern where the use of force was equal to or even greater than that alleged in the instant matter, but for which the *Graham* analysis applied by the Ninth Circuit resulted in a finding that the force was reasonable. Here, the force applied by Officer Sturgill was likewise reasonable and necessary to control a rapidly evolving situation where officers were actively engaged in physical altercations with party-goers under the influence of alcohol. Faced with no issues of material fact or legal arguments raised by the Plaintiff, the Court concludes that Plaintiff's Fourth Amendment claim fails as a matter of law.

### 2. Eighth Amendment Claim

"To sustain an Eighth Amendment claim, the plaintiff must prove a denial of the minimal civilized measure of life's necessities, occurring through deliberate indifference by prison personnel or officers." *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir.1996). Supreme Court precedent and the underlying purposes of the Eighth Amendment indicate that there must be an intent to punish in order to establish a cause of action. *Robins v. Meecham*, 60 F.3d 1436, 1440 (9th Cir.1995). The Eighth Amendment protects the interests and safety of inmates, and restrains governmental overreaching. *Id*.

Mr. Martinez alleges he was subjected to cruel and unusual punishment under the Eighth Amendment. Dkt. #5 at 7 (Complaint, ¶¶ 4.5 and 4.7). Defendants argue that Plaintiff's claim is based on being pepper sprayed during the party incident, not any alleged treatment after being incarcerated by government officials, and that his claim must therefore be analyzed under the Fourth Amendment, not the Eighth Amendment. Dkt. #15 at 15. Again, Mr. Martinez does not

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 9

respond. The Court agrees with Defendants and, having already dismissed Plaintiff's Fourth Amendment claim as a matter of law, dismisses this claim as well.

### 3. Due Process Claim

Defendants argue that Plaintiff's due process claim, to the extent that he intends it to be separate from his other claims, should be dismissed as it is subsumed by his Fourth Amendment claim. The Court agrees and dismisses this claim as well.

### 4. State Claims

Defendants argue that Plaintiff's state constitutional claims must also be dismissed because Plaintiff failed to comply with the requirement of filing a claim for damages outlined in RCW 4.96.010(1) and because there is no cause of action for violation of the Washington State Constitution generally. *See* Dkt. #15 at 18-19. Again, Plaintiff does not respond. The Court agrees with Defendants. Additionally, even if Plaintiff had complied with RCW 4.96.010(1), his state constitutional claims mirror his federal claims, and would be dismissed for the same reasons stated above.

### 5. Remaining Claims

To the extent that Plaintiff pleads claims for failure of the police to read him his constitutional rights, or for failure of Defendant City of Tukwila to properly train police officers, the Court agrees with Defendants' analysis and will dismisses these claims as well. *See* Dkt. #15 at 16-18.

//

//

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 10

### 6. Qualified Immunity and Failure to Serve

The Court need not address Officer Sturgill's affirmative defense of qualified immunity or claim of lack of personal jurisdiction for failure to serve as the Court has already dismissed Plaintiff's claims for the reasons above.

## IV.   CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS that:

1) Defendants' Motion for Summary Judgment, Dkt. #15, is GRANTED.

2) All of Plaintiff's claims are dismissed with prejudice.

3) This case is now CLOSED.

DATED this 4 day of January, 2016.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE